# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHNNY WEBBER and DEBORA WEBBER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-01169-TWP-DML |
| ) | |
| ROGER BUTNER, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON PENDING MOTIONS

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Roger Butner ("Butner") (Filing No. 32), a Motion to Strike Affidavit of Farheen S. Khan, Ph.D. ("Dr. Khan") filed by Plaintiffs Johnny Webber ("Webber") and Debora Webber (collectively, the "Plaintiffs") (Filing No. 37), and a Request for Judicial Notice of Order from Florida Trial Court filed by the Plaintiffs (Filing No. 40).

Following an accident where Webber was seriously injured by a large tree branch, the Plaintiffs filed a Complaint against Butner, asserting a claim for negligence, including Debora Webber's derivative claim for loss of consortium, love, care, companionship, and affection of her husband (Filing No. 1-3). Butner filed a Motion for Summary Judgment, asserting that the danger was known and obvious, that he did not breach a duty and he could not have caused or prevented Webber's injury. Also before the Court is Plaintiffs Motion to Strike and their Request for Judicial Notice. For the following reasons, the Court **denies** Butner's Motion for Summary Judgment, **grants** the Plaintiffs' Motion to Strike, and **grants** the Plaintiffs' Request for Judicial Notice.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to the Plaintiffs as the non-moving parties. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The Plaintiffs are a married couple who reside in Fayette County, Indiana. Butner resides in Oxford, Ohio, and owns property in Indiana where the incident giving rise to this action took place ([Filing No. 34-1 at 2](#)). On April 17, 2014, Butner purchased a 47.6 acre property in Everton, Indiana ([Filing No. 39-1 at 11](#)). The property was brought to Butner's attention by David Moore ("Moore") ([Filing No. 39-2 at 10](#)), a longtime professional in the lumber industry, who has cut down hundreds of thousands of trees in his lifetime. *Id.* at 4–6. Moore had an existing social relationship with both Butner and Webber. *Id.* at 7–9.

Two or three weeks before Butner closed on the property, he and Moore visited the property so that Moore could determine whether he would buy trees from the property. Moore decided not to purchase any trees because they did not fit his needs, but Moore recommended to Butner that he contact David Shelton ("Shelton"), who also was in the lumber industry, to see if Shelton was interested in purchasing any trees. *Id.* at 20–23.

Moore provided the following testimony at his deposition: While he and Butner were at the property together, Moore told Butner that the trees "were very dangerous, and [that] if he didn't want to sell them, if he wanted me to cut them down for him, I would." ([Filing No. 39-2 at 22](#).) "I volunteered to do it for him." *Id.* "I would as a friend, yes, because they were dead and needed to be cut down. I advised him not to -- I really advised him not to cut them because they were so dangerous." *Id.* at 23. Moore told Butner that "they were very dangerous trees, that [he should]

get me or Mr. Shelton to cut them." *Id.* at 29. Moore also advised Butner that a professional should cut down the trees. *Id.* at 50. Butner does not recall Moore telling him that the trees were dangerous or that he should have a professional cut down the trees ([Filing No. 39-1 at 34](#)).

On April 18, 2014, the day after Butner closed on the property, Webber went with him to the property to assist his friend Butner, in felling numerous trees on the property, free of charge. Only Webber and Butner were present when the trees were being cut down. The two discussed that Webber would be primarily responsible for operating the chainsaw to cut the trunks of the trees, and Butner would assist by acting as a lookout for any hazards, including without limitation falling branches. ([Filing No. 1-3 at 2](#)). Webber used his chainsaw to cut down five to seven of the trees. The trees were approximately fifty to seventy feet tall and approximately nineteen to twenty-two inches in diameter ([Filing No. 39-4 at 2](#)–3). While Webber was cutting down the trees, Butner did not tell Webber about Moore's warnings ([Filing No. 39-5](#)). After cutting down approximately five to seven trees, Webber began cutting down another tree. A large branch fell from above and struck Webber on the head, resulting in serious injuries. Butner did not see the branch fall ([Filing No. 39-4 at 3](#); [Filing No. 39-1 at 45](#)). The tree from which the branch fell was the tallest tree that Webber had cut that day ([Filing No. 39-6 at 41](#)–42).

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v.*

3

*Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties" nor "the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III. <u>DISCUSSION</u>

Butner moves for summary judgment, asserting that the danger of falling tree branches was known and obvious, that he did not breach a duty and he could not have caused or prevented Webber's injury. The Plaintiffs filed a Request for Judicial Notice and a Motion to Strike the affidavit of Webber's proposed expert, Dr. Khan. The Court will first address Plaintiffs' request

for judicial notice and their motion to strike, before turning to Butner's motion for summary judgment.

A. **Plaintiffs' Request for Judicial Notice**

Butner hired Farheen S. Khan, Ph.D., to provide expert testimony regarding "human factors issues related to the incident" and "whether Mr. Butner would have had sufficient time to prevent the incident from occurring." ([Filing No. 34-3 at 2](#).) The Plaintiffs ask the Court to take judicial notice of an order issued in a Florida state court proceeding, *Judge v. Tamiami Memorial Post No. 8118, Veterans of Foreign Wars of the U.S. Inc.*, No. 2014 CA 001771 NC (12th Cir. Sarasota Cnty. Fla.) (the "Florida Order") ([Filing No. 39-13](#)). The Florida Order "considered the opinions of Farheen S. Khan, Ph.D., and found many of them to be 'pure opinions' which could not meet the standards of *Daubert*." ([Filing No. 40 at 2](#).) *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The Plaintiffs ask this Court to take judicial notice of the Florida Order, which determined some of Dr. Khan's conclusions were pure opinions and granted in part a motion to strike Dr. Khan's opinions. In this case, the Plaintiffs also challenge Dr. Khan's opinions, arguing that her opinions are "nothing more than her untestable assertions–i.e., 'pure opinions.'" ([Filing No. 40 at 2](#).) The Plaintiffs seek judicial notice of the Florida Order to support their Motion to Strike Dr. Khan's affidavit and in opposition to Butner's summary judgment motion. Butner did not file a response to the Plaintiffs' Request for Judicial Notice.

Federal Rule of Evidence 201 provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned". Furthermore, a court "(1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary

5

information." Fed. R. Evid. 201(c). As the Plaintiffs point out, "Determinations to be judicially noticed include proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue." *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996) (citation and quotation marks omitted).

The Seventh Circuit explained in *Opoka*, "Indeed, it is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice." *Id.* However, the Seventh Circuit also explained,

> We emphasize that we are not considering the reasons underlying the [other tribunal's] decision . . . , but the simple fact that the decision has been made. . . . [A] court may take notice of another court's order only for the limited purpose of recognizing the "judicial act" that the order represents or the subject matter of the litigation. A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.

*Id.* (citations and quotation marks omitted).

Following the Seventh Circuit's direction in *Opoka*, the Court **grants** the Plaintiffs' Request for Judicial Notice of the Florida Order and recognizes that, in that state court proceeding, Dr. Khan provided expert testimony which was challenged and was stricken in part. The Court notes that taking judicial notice does not conclusively establish the propriety of striking Dr. Khan's opinions in this matter. That determination must be made independent of the Florida court's decision. The Court further notes that Dr. Khan's opinions in this matter are different from her opinions in the Florida matter and involve entirely different facts.

**B.** **Plaintiffs' Motion to Strike**

Dr. Khan was hired by Butner to provide expert testimony regarding "human factors issues related to the incident" and "whether Mr. Butner would have had sufficient time to prevent the incident from occurring." ([Filing No. 34-3 at 2](Filing No. 34-3 at 2).) Dr. Khan is the Director of the Human Factors

6

Group for Rimkus Consulting Group, Inc. and her area of expertise is in understanding risk perception, human error and risk-taking behaviors in product liability, workplace accidents, premises liability and transportation accidents. *Id*. In her affidavit, Dr. Khan explains that her expert opinion is based on the depositions of Butner and Webber, discovery responses, photographs of the property and the tree, and her experience and research in human factors. *Id*. She then provides the following expert opinion:

> [T]he height of the tree was between 40–50 feet, assuming that the subject branch was located below full height, between 30–45 feet, it would take the branch between 1.4 – 1.7 second[s] to free fall to the ground. It is my opinion that even if Mr. Butner were looking up at the tree, knowing both form (branch) and location (subject tree) of expected stimulus, in the best case scenario if he was looking at the location where a branch was falling from, it would take Mr. Butner a minimum of 0.25 seconds to detect a falling branch. Once detected, Mr. Butner would have to identify the stimulus (i.e., a falling branch), determine its location of fall (determine whether it was falling on him or Mr. Webber), decide how to respond (determine what needed to be done), and initiate the chosen response (shout out a warning, step out of the way, or push Mr. Webber away), which would increase the total perception response time.
>
> It is my opinion that even if Mr. Butner was looking toward the tree, he would not have had sufficient time to prevent the incident from occurring in the 1.7 seconds window between the branch falling and striking Mr. Webber, assuming the branch was falling from a height of 45 feet.

*Id.* at 2–3.

The Plaintiffs ask the Court to strike Dr. Khan's affidavit pursuant to Federal Rule of Civil Procedure 56(c)(4) and Federal Rule of Evidence 702, asserting that the affidavit of proffered expert testimony fails the rigors of Rule 702. *See B.F. v. Buckle, Inc.*, 2015 U.S. Dist. LEXIS 160510, at *4 (S.D. Ind. Dec. 1, 2015) ("[I]f the affiant offers an expert opinion, she must give *reasons* for the opinion, and not merely state her conclusions."). The Plaintiffs argue, "[O]n its face the Khan Affidavit is insufficient to carry its Rule 702 obligations." (Filing No. 37 at 2.) They further argue,

> And, even when viewed through the testimony in Khan's deposition and the expert report that was an exhibit to her deposition but was not offered by Butner at summary judgment, her opinion is based on clear misunderstanding of the facts of the case and lack a clear methodology that can be subjected to scientific scrutiny.

*Id.*

The Plaintiffs provide examples of how Dr. Khan's affidavit fails to satisfy the rigors of Rule 702. The affidavit gives no explanation for the assumption that the branch fell from forty-five feet instead of fifty feet. There is no explanation of Dr. Khan's time estimates or calculations. There is no explanation for the assumption that the branch was in a free fall rather than breaking off the trunk gradually or hitting other branches during its fall and thereby slowing its fall to the ground. The Plaintiffs further point out that Butner's own discovery responses suggest that the trees were fifty to seventy feet tall ([Filing No. 39-4 at 3](#)), not forty to fifty feet tall as assumed by Dr. Khan, and the tree that actually injured Webber was the biggest tree that Webber was working on that day ([Filing No. 34-2 at 5](#)). The Plaintiffs provide additional examples to support their argument regarding the affidavit's shortcomings. They then assert that Dr. Khan's opinion does not provide sufficient facts or data, and more importantly, it does not provide any methodology to show how she reached her conclusions or to allow anyone to test her conclusions. The Plaintiffs assert that, rather than providing a scientific or expert opinion, Dr. Khan has provided a pure, speculative opinion or a "gut instinct." ([Filing No. 38 at 24](#).)

Similar to the Request for Judicial Notice, Butner did not file a response to the Plaintiffs' Motion to Strike Dr. Khan's affidavit.

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. The rule requires "evidentiary relevance and reliability" of expert testimony, with the focus on "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "Under the *Daubert* gatekeeping requirement, the district court has a duty to ensure that

expert testimony offered under Federal Rule of Evidence 702 is both relevant and reliable." *Jenkins v. Bartlett*, 487 F.3d 482, 488–89 (7th Cir. 2007) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). "Whether proposed expert testimony is sufficiently reliable under Rule 702 is dependent upon the facts and circumstances of the particular case." *Id.* at 489. The district court is given "latitude in determining not only how to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010).

"In determining reliability, *Daubert* sets forth the following non-exhaustive list of guideposts: (1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; and (3) whether the theory has been generally accepted in the scientific community." *Id.* "The court should also consider the proposed expert's full range of experience and training in the subject area, as well as the methodology used to arrive at a particular conclusion." *Id.*

> Since the gatekeeping inquiry must be tied to the facts of the particular case, . . . a trial court may – but is not required to – consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine the testimony's reliability. But, the [Supreme] Court stressed, those factors, which were meant to be helpful, not definitive, neither necessarily nor exclusively apply to all experts or in every case. Their applicability will depend on the nature of the issue, the expert's particular expertise, and the subject of his testimony. The procedure employed will depend largely on the particular circumstances of the particular case at issue.

*Richman v. Sheahan*, 415 F. Supp. 2d 929, 934 (N.D. Ill. 2006) (citations and quotation marks omitted). Additionally, the district court determines whether the proposed expert testimony will assist the "trier of fact in understanding the evidence or in determining a fact in issue." *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002).

The Court makes the following observations in agreement with arguments raised by the Plaintiffs. Butner provides no information about Dr. Khan's education, training, or experience.

9

Butner and Dr. Khan provided no information about the methodology used by Dr. Khan to formulate her expert opinion. The affidavit is deficient in providing factual support for the conclusions. The cursory opinions offered in the affidavit are based on assumptions that are not supported by the designated evidence. Because of improper assumptions, the lack of factual support, and the lack of methodology and calculations, the Court determines that Dr. Khan's affidavit falls short in satisfying Rule 702's requirements for expert testimony on summary judgment. Therefore, the Court **grants** the Plaintiffs' Motion to Strike Dr. Khan's affidavit for purposes of summary judgment.

C. **Butner's Motion for Summary Judgment**

Summary judgment in negligence cases is rarely appropriate." *Geisner v. G4S Secure Sols. (USA) Inc.*, 2013 U.S. Dist. LEXIS 128021, at *6 (S.D. Ind. Sep. 9, 2013); see also *McCauley v. Nucor Corp.*, 2007 U.S. Dist. LEXIS 9688, at *12–13 (S.D. Ind. Feb. 9, 2007) ("Indiana negligence claims are particularly fact sensitive and are governed by a standard of the objective reasonable person – one best applied by a jury after hearing all of the evidence. . . . Hence, summary judgment in these types of negligence actions is generally seen to be inappropriate.").

To support a claim for negligence, the Plaintiffs must show that: (1) Butner owed Webber a duty; (2) Butner breached that duty; and (3) the breach proximately caused Webber's injuries. *Morehead v. Deitrich*, 932 N.E.2d 1272, 1277 (Ind. Ct. App. 2010). Without a duty, there cannot be a breach of duty, and whether a duty exists is a question of law. *Rogers v. Martin*, 63 N.E.3d 316, 321 (Ind. 2016).

Butner argues he is entitled to summary judgment because "the danger of falling branches was known and obvious to Mr. Webber." ([Filing No. 34 at 6](Filing No. 34 at 6).) He contends that he "did not breach the duty and did not proximately cause the plaintiff's injuries," *id.*, because "he would not have

had sufficient time to prevent the incident from occurring in the 1.7 seconds window between the branch falling and striking Mr. Webber." *Id*. at 14.

Responding to the summary judgment motion, the Plaintiffs assert that Butner breached his duty of reasonable care by failing "to pass along Moore's [w]arning to Webber because the danger required Butner to protect Webber from foreseeable harms on the property." ([Filing No. 38 at 5](#).) The Plaintiffs further argue that Butner negligently caused Webber's injuries because "the full danger was not known and obvious to Webber," Butner learned of the danger from Moore, and Butner failed to share that knowledge with Webber. Id. at 7–8.

The type of duty owed to a person while he or she is on another's premises depends on the status of that person. *Burrell v. Meads*, 569 N.E.2d 637, 639–40 (Ind. 1991). A person's status on a premises can be classified as either a trespasser, licensee, or invitee. Id. One type of invitee is an individual "invited to enter or remain on land for a purpose directly or indirectly connected with business dealings" of the landowner. *Taylor v. Duke*, 713 N.E.2d 877, 881 (Ind. Ct. App. 1999). When an invitee enters the land of another, the landowner owes the invitee "a duty to exercise reasonable care for his protection while he is on the landowner's premises." *Burrell*, 569 N.E.2d at 640. The parties do not dispute that Webber was an invitee on Butner's property, and thus, Butner owed a duty to exercise reasonable care.

The Indiana Supreme Court in *Burrell* explained:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

*Id*. at 639–40 (quoting Restatement (Second) of Torts § 343 (1965)). "When a physical injury occurs as a result of a condition on the land, the three elements described in Restatement (Second) of Torts section 343 accurately describe the landowner-invitee duty." *Daviess-Martin Cty. Joint Parks & Rec. Dep't v. Estate of Abel*, 77 N.E.3d 1280, 1286 (Ind. Ct. App. 2017) (quoting *Rogers*, 63 N.E.3d at 322–23).

Restatement (Second) of Torts § 343A, "read in conjunction with § 343," provides, "'[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.'" *Merrill v. Knauf Fiber Glass, GmbH*, 771 N.E.2d 1258, 1265 (Ind. Ct. App. 2002) (quoting Restatement (Second) of Torts § 343A). "The word 'known' means knowledge of the existence of the condition or activity itself and also appreciation of the danger it involves." Id. (quoting Restatement (Second) of Torts § 343A cmt. b). In evaluating whether a breach of duty was committed, "a landowner's knowledge is evaluated by an objective standard." *Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind. 1990). In contrast, "the invitee's mental state of venturousness (knowledge, appreciation, and voluntary acceptance of the risk) demands a subjective analysis of actual knowledge." *Id*.

Whether Butner had knowledge of the danger posed by the trees on his property is disputed in the designated evidence. In his deposition, Butner stated that he did not recall Moore telling him that the trees should be cut down by a professional ([Filing No. 39-1 at 34](Filing No. 39-1 at 34)). However, Moore stated in his deposition that he visited Butner's property before the accident and told Butner that the trees were very dangerous and should be cut down by professionals ([Filing No. 39-2 at 22](Filing No. 39-2 at 22), 23, 29, 50). In his deposition, Moore testified, "I just told him they were very dangerous trees,

that him or -- get me or Mr. Shelton to cut them. And I think even after the accident, I said, 'I told you to get us to do that.'" Id. at 29.

Webber's "mental state of venturousness . . . demands a subjective analysis of actual knowledge." Douglass, 549 N.E.2d at 370. Butner argues that "Webber was much more experienced with cutting down trees than Butner and had cut trees for most of his life, though the tree at issue was about the biggest that he had ever cut down." (Filing No. 46 at 2.) Webber explained that he learned how to cut down trees by reading books and also from his father and grandfather (Filing No. 39-6 at 49). Webber was aware that branches could fall while cutting down trees, which is why he asked Butner two or three times to watch his back. Id. at 32, 71–72. Butner disputes that Webber asked him to watch his back (Filing No. 39-1 at 39). Before the incident, Webber had never cut down a dead tree (Filing No. 39-6 at 74). Webber testified that his experience with cutting trees mostly involved logs that were already down on the ground. *Id*. at 30–31. There are many factual disputes regarding Webber's and Butner's levels of knowledge, experience, and appreciation of the risks. Summary judgment is not appropriate because of these material disputes.

Butner also argues that he "would not have had sufficient time to prevent the incident from occurring in the 1.7 seconds window between the branch falling and striking Mr. Webber". (Filing No. 34 at 14.) Butner bases this time estimate on the expert testimony of Dr. Khan. However, as explained above, Dr. Khan's affidavit is stricken. Furthermore, there are factual disputes regarding timing and the fall of the branch that injured Webber, which preclude summary judgment.

Butner's argument regarding Debora Webber's derivative claim for loss of consortium is that it must be dismissed on summary judgment because Webber's claim should be dismissed on summary judgment. The Plaintiffs respond that Debora Webber's claim, like Webber's claim, is

13

not appropriately disposed of by summary judgment. The Court agrees that the derivative claim for loss of consortium is dependent on Webber's claim, and because there are many factual disputes that preclude summary judgment on Webber's claim, Debora Webber's claim cannot be resolved by summary judgment.

## IV. CONCLUSION

The material facts of Plaintiffs negligence claim are disputed. For the reasons explained in this Entry, Butner's Motion for Summary Judgment ([Filing No. 32](#)) is **DENIED**. In addition, the Plaintiffs' Motion to Strike Dr. Khan's affidavit ([Filing No. 37](#)) is **GRANTED**, and the Plaintiffs' Request for Judicial Notice ([Filing No. 40](#)) is **GRANTED**. The Plaintiffs' claims for negligence and loss of consortium remain pending for trial.

**SO ORDERED.**

Date: 12/20/2017

*signature*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Colin E. Flora
PAVLACK LAW, LLC
colin@pavlacklawfirm.com

Eric S. Pavlack
PAVLACK LAW LLC
eric@pavlacklawfirm.com

Benjamin G Stevenson
THRELKELD & ASSOCIATES
bstevenson@threlkeld-legal.com

W. Brent Threlkeld
THRELKELD & ASSOCIATES
brent@threlkeld-legal.com